United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALBERT KISSLING,

Plaintiff,

v.

WYNDHAM VACATION RESORTS, INC., et al.,

Defendants.

Case No. 15-cv-04004-EMC

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Docket No. 11

Plaintiff Albert Kissling filed the instant suit against Defendants Wyndham Vacation Resorts, Inc. and Wyndham Vacation Ownership, Inc. The action is predicated on allegations that Defendants sold Plaintiff timeshare points through fraudulent sales conduct. Plaintiff has sued Defendant on eight Counts: (1) intentional fraud and deceit, (2) intentional misrepresentation, (3) violation of Business & Professional Code Section 17200, (4) violation of Welfare & Institutions Code Section 15610.30, (5) violation of the Consumer Legal Remedies Act (CLRA), (6) violation of California Corporations Code Section 25401, (7) constructive fraud, and (8) negligent misrepresentation. Docket No. 1, Exh. B (First Amended Complaint) (FAC).

Defendants now move to dismiss Counts five through eight of Plaintiff's First Amended Complaint with prejudice under Rule 12(b)(6). Docket No. 11 (Motion to Dismiss) (Mot.) at 1. Defendants argue that the CLRA claim fails because timeshare points do not meet the definition of "goods" or "services" under the Act, and that the constructive fraud claim fails because it does not plead the existence of a fiduciary or confidential relationship. Mot. at 1-2. Defendants also contend that the California Corporations Code Section 25401 and negligent misrepresentation claims fail because they are time-barred. *Id.* The motion to dismiss came on for hearing before

United States District Court
For the Northern District of California

the Court on November 9, 2015. For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss with prejudice.

## I. FACTUAL & PROCEDURAL HISTORY

On or about December 19, 2011, Plaintiff attended a sales presentation at the Wyndham Canterbury in San Francisco, CA. FAC ¶ 8. At that presentation, a Wyndham sales associate[1] informed Plaintiff that he owed about $85,000 on his timeshare account even though Plaintiff argued that his balance was closer to $52,000. *Id*. Plaintiff asked the sales associate to contact Ed Gray, another sales associate in Alexandria, Virginia, from whom Plaintiff had most recently bought timeshare points. *Id.* ¶ 9. Plaintiff claims that the San Francisco sales associate never contacted Mr. Gray even though she told Plaintiff that she had spoken to Mr. Gray and verified that Plaintiff indeed owed $85,000 on his account. *Id.*

Due to this misinformation, Plaintiff agreed to enroll in a program called Club Wyndham Access, which he believed would lead to consolidated maintenance fees and a lower interest rate and monthly payments. *Id.* ¶ 10. Plaintiff later learned from another Wyndham representative, Elizabeth Brock, that his balance had only been $52,000 and that he incurred an additional $33,000 in liability after he purchased additional timeshare points on December 19, 2011, at the Wyndham Canterbury presentation. *Id.* ¶ 12. Plaintiff alleges that he was never informed that his enrollment in Club Wyndham Access meant the purchase of additional timeshare points or an increase in financial liability. Plaintiff also alleges that Wyndham sales associates target individuals over the age of seventy and misrepresent information to them in order to induce them into increasing their payments and investments with Defendants. *Id.* ¶¶ 11-12.

On approximately June 6, 2012, Plaintiff met with Katherine Landry, a representative of Wyndham's Member Services Team, to discuss his experience at the Wyndham Canterbury and attempt to cancel his purchase and contract for additional timeshare points. *Id.* ¶ 14. Ms. Landry called her supervisor, Rebecca Hawkins, and Plaintiff was asked to meet with Ms. Hawkins at

---

[1] Plaintiff has not identified the sales associate by name in any of the papers submitted to the Court.

another office. *Id.* When Plaintiff arrived at Ms. Hawkins office, Representatives Jorge Jorge and Jeff Cross informed Plaintiff that Ms. Landry had reported him for sexual harassment and that he could be arrested. *Id.* ¶ 15. After agreeing to set the matter aside, the two representatives allegedly tried to convince Plaintiff to purchase the next highest level of timeshare-point membership. *Id.* ¶¶ 15-16. Once the representatives left the room to purportedly determine the amount Plaintiff would be required to pay to purchase the next level of timeshare-point membership, Plaintiff left the room and decided to leave the Wyndham resort he was staying at. *Id.* ¶ 16. When Plaintiff attempted to return his room key at the front desk, he was arrested for the sexual battery of Ms. Landry. *Id.*

Plaintiff alleges that Wyndham sales associates target individuals over the age of seventy and misrepresent information to them in order to induce them into increasing their payments and investments with Defendants. *Id.* ¶¶ 11-12. Plaintiff also alleges that Defendants' sales associates used promises to set aside the sexual-harassment claim against Plaintiff as a means to coerce him into purchasing additional timeshare points. *Id.* ¶ 17. Plaintiff believes that he was arrested in retaliation for not purchasing additional timeshare points. *Id.*

Based on the above allegations, Plaintiff filed a Complaint with five causes of action consisting of fraud, intentional misrepresentation, violation of Business & Professional Code Section 17200, violation of Welfare & Institutions Code Section 15610.30, and violation of the CLRA on December 17, 2014, in the San Francisco County Superior Court. Docket No. 1, Exh. A (Complaint). On July 27, 2015, Plaintiff filed a First Amended Complaint, adding claims of violation of California Corporations Code Section 25401, constructive fraud, and negligent misrepresentation. FAC ¶ 1. On September 1, 2015, Defendants removed the case to federal court. Docket No. 1 (Removal).

## II. DISCUSSION

### A. Standard of Review

Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows for dismissal based on a failure to state a claim for relief. A motion to dismiss based on this rule essentially challenges the legal sufficiency of the claims alleged. *See Parks*

United States District Court
For the Northern District of California

*School of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering a Rule 12(b)(6) motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim of relief that is plausible on its face.'" *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 556. However, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. "When a complaint is dismissed for failure to state a claim, leave to amend should be granted unless it can be determined that no possible amendment would cure the deficiency." *Gyore v. Krausz Precision Mfg. Corp.*, 954 F.2d 727 (9th Cir. 1992).

B. Counts Six and Eight: California Corporations Code § 25401 and Negligent Misrepresentation Claims

In his opposition and at the hearing, Plaintiff conceded that these claims are indeed time-barred. Docket No. 20 (Plaintiff's Opposition) (Opp.) at 5 n.1. The Court therefore dismisses these claims with prejudice.

C. Count Five: CLRA Claim

The CLRA protects against unfair competition and deceptive practices intending to result in the sale or lease of "goods" or "services" to any consumer. *See* Cal. Civ. Code § 1770(a). Defendants argue that the Plaintiff does not have a claim under the CLRA because timeshare points do not fall under the Act's definition of "goods" or "services." Mot. at 3. As defined by the CLRA:

> (a) "Goods" means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including

> goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property.
>
> (b) "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.

Cal. Civ. Code § 1761(a), (b).

The California Supreme Court has not addressed whether timeshare points fall within the CLRA's definition of goods or services. *See Wixon v. Wyndham Resort Dev. Corp*., No. C 07-02361 (JSW), 2008 WL 1777590, at *4 (N.D. Cal. Apr. 18, 2008). However, the Northern District of California and California Court of Appeal have held that timeshare points do not fall within the CLRA's definition of "goods" or "services."[2]

In *Wixon*, the court described timeshare points as a vacation license, constituting a right to use and occupy a unit during the member's timeshare use, and a nonexclusive license to use, enjoy, and occupy the property and timeshare points, among other things. *Id.* at *4. Thus, timeshare points were not tangible chattel in that they could not be touched, seen, or smelled. *Id.* Consequently, the court concluded that as a matter of law, timeshare points did not qualify as a "good" under the CLRA. *Id.*

Likewise, in an unpublished opinion, the California Court of Appeal held that timeshare points were not goods under the CLRA. *Boling v. Trendwest Resorts, Inc.*, No. G034203, 2005 WL 1186519, at *4-5 (Cal. Ct. App. May 19, 2005) (unpublished).[3] The court compared the sale of timeshare points to "membership interests" entitling the "members to the use of condominium units for one or two weeks each year" in *Cal-Am Corp. v. Department of Real Estate*, which the court found constituted interests in real property that are in the nature of a lease. *Id.* at *4 (quoting

---

[2] Because for the most part timeshare interests, vacation credits, and timeshare points are interchangeable terms, this Order uses the term "timeshare points" to provide consistency even if relevant cases sometimes use a different term.

[3] "Although unpublished California cases have no precedential value, they may be considered 'as a possible reflection of California law.'" *Valencia v. Volkswagen Grp. of Am. Inc*, No. 15–cv–00887–HSG, 2015 WL 4747533, at *6 (N.D. Cal. Aug. 11, 2015) (quoting *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011)).

*Cal-Am Corp. v. Dep't of Real Estate*, 104 Cal. App. 3d 453, 456-57 (1980)). The Court of Appeal found several similarities between the sale of membership interests in condominium units and vacation-club memberships, such as being able to stay at a specific resort or hotel for a certain amount of time. In the end, the court concluded that, even assuming that timeshare points are chattel, the timeshares were not a *tangible* chattel because the timeshares represented an incorporeal right in real property. *See Boling*, 2005 WL 1186519, at *4. The court reasoned that tangible property consists of things that can be touched, seen, or smelled, while intangible property is usually a "right" rather than a physical object. *Id.* As the CLRA applies only to "tangible chattels," timeshare interests were not a "good" that could support a CLRA claim.

Like *Wixon* and *Boling*, the Court finds that timeshare points are not "goods" under the CLRA. The CLRA's definition of goods explicitly defines goods as "tangible chattels," which is distinct from an interest in real property. *See* Cal. Civ. Code § 1761(a). Moreover, the CLRA provides that:

> The provisions of this title shall not apply to any transaction which provides for the construction, sale, or construction and sale of an entire residence or all or part of a structure designed for commercial or industrial occupancy, with or without a parcel of real property or an interest therein, or for the sale of a lot or parcel of real property, including any site preparation incidental to such sale.

*Id.* at § 1754. As conceded by Plaintiff at the hearing and in his papers, timeshare points are an interest in real property, which is not covered by the CLRA's definition of goods. It is undisputed that in this case, Plaintiff's purchase of timeshare points came with a deed of trust. Thus, Plaintiff's rights emanate from a purchase of real property, not tangible chattels. Opp. at 7. *See also Boling*, 2005 WL 1186519, at *4-5 ("The memberships sold by defendant constituted incorporeal rights in real property. [Citation] ¶ Consequently, the trial court properly dismissed the first cause of action on the ground it lacked merit.")

Nonetheless, Plaintiff argues that timeshare points are a "good" covered under the CLRA because his purchase of timeshare points, although intangible, were memorialized on a written deed of trust and the contract was obtained at a brick-and-mortar sales office. Opp. at 7. Plaintiff argues that his purchase of timeshare points is analogous to *Ladore v. Sony Computer*

*Entertainment America, LLC*, 75 F. Supp. 3d 1065 (N.D. Cal. 2014), where this Court rejected the defendant's argument that a video game disc was not a "good" under the CLRA. In *Ladore*, the defendant argued that the good at issue was the video game software, not the disc that it was sold on. *Id.* at 1074-75. The Court rejected this argument, finding that the video game was purchased on a physical disc at a brick-and-mortar store. *Id.* at 1073. Furthermore, unlike an insurance contract or credit card which was merely a "physical representation" of the parties' intangible agreement, "'[c]onsumers do not purchase software discs or books to memorialize or prove the existence of an agreement; they purchase the objects to possess and use them. As a physical object purchased for a consumer's use, a software disc is a tangible chattel.'" *Id.* (quoting *Haskins v. Symantec Corp.*, No. 13-cv-01834-JST, 2013 WL 6234610, at *9 (N.D. Cal. Dec. 2, 2013).

Here, Plaintiff argues that not only did he buy timeshare points at a brick-and-mortar location like in *Ladore*, but that timeshare points are analogous to videogame software and the timeshare's deed of trust and written contract are analogous to a videogame disc. Opp. at 7. However, the Court finds that the deed of trust and written contract are not like a software disc, which a consumer purchases to use. It is instead like the insurance contract or credit card that is merely a "physical representation" of an agreement for something intangible – in this case Plaintiff's timeshare points, which are themselves an incorporeal right in real property. The fact that Plaintiff's timeshare points may be memorialized on paper does not turn the timeshare points into a tangible chattel covered by the CLRA.

In the alternative, Plaintiff argues that timeshare points are a "service" under the CLRA. However, when pressed for an explanation as to how timeshare points are a service, Plaintiff responded that the right to use a facility for a specific amount of time was the "service" rendered by the timeshare points. This argument was considered and properly rejected by the *Wixon* court, which found that that the right to use and occupy a unit was not a service covered by the CLRA, even when applying a liberal construction of the CLRA. 2008 WL 1777590, at *4.

Plaintiff's reliance on *Hernandez v. Hilltop Financial Mortgage, Inc.*, 622 F. Supp. 2d 842 (N.D. Cal. 2007) likewise fails. There, the court held that the financial services rendered by the defendant were sufficient to constitute a "service" under the CLRA. *Id.* at 851. Although the

extension of a credit line usually did not fall under the CLRA's definition of a "service" (because the issuing of a credit line alone is not work or labor or related to the sale or repair of a tangible chattel) the court in *Hernandez* determined that the totality of the services provided were indeed a "service" under the CLRA because the defendant provided assistance in developing, securing, and managing an acceptable refinancing plan so that the plaintiffs could remain in possession of their home, along with the credit line. *See id.* In contrast, there is no allegation that Defendants provided Plaintiff with any "services" other than the sale of the timeshare points that goes beyond that sale and into a level of ancillary services attendant to the use of the vacation unit. The core value of the timeshare points is the interest in and use of real estate, not *e.g.*, housekeeping services incidental thereto. Consequently, timeshare points do not fall under the CLRA's definition of "goods" or "services." For this reason, the Court dismisses the CLRA claim with prejudice.

D. Count Seven: Constructive Fraud Claim

Defendants argue that Plaintiff's constructive fraud claim fails as a matter of law because he has not alleged the existence of a fiduciary or confidential relationship that is a threshold for such a claim. Mot. at 5. Under California law, constructive fraud comprises all acts, omissions, and concealments involving breach of legal or equitable duty, trust, or confidence that results in damage to another. *Grenier v. Harley*, 250 F.2d 539, 544 (9th Cir. 1957). In other words, "[c]onstructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated" and there exists a fiduciary or confidential relationship which was breached. *See id.*; *Schauer v. Mandarin Gems of California, Inc.*, 125 Cal. App. 4th 949, 961 (2005). The existence of a fiduciary or confidential relationship is a question of fact, which the party asserting the relationship has the burden of proving by a preponderance of the evidence. *See Estate of Gelonese v. Balassi*, 36 Cal. App. 3d 854, 862 (1974).

Plaintiff claims that he does have a fiduciary relationship with Defendants because timeshare points are a form of real property that California requires be sold by licensed real-estate agents, who owe fiduciary duties to their clients in some circumstances. Opp. at 7-8. However, the district court in *Martinez v. Welk Group, Inc.*, found that a fiduciary duty did not exist between

a purchaser of timeshare points and a corporation selling timeshare points where there was no "conduct or circumstances that could reasonably elevate the parties [sic] conduct above those present by virtue of the contractual relationship." 907 F. Supp. 2d 1123, 1132-33 (S.D. Cal. 2012). There, the plaintiff sought to buy timeshare points from the defendant and asked if the resort was safe for his son who previously had cancer and needed a clean environment. *Id.* at 1127. The sales agent assured the plaintiff that the resort he was buying timeshare points for was clean, safe, and well maintained. *Id.* The plaintiff later became suspicious that mold was growing at the resort and filed suit for breach of fiduciary duty. *Id.* Nevertheless, the court found that despite the sales agent's assurance that the resort was clean, safe, and well maintained, the plaintiff failed to prove the existence of a fiduciary relationship, "above and beyond the contractual relationship between the parties." *Id.* at 1133. The *Martinez* court explained that the "'relationship of seller to buyer is not one ordinarily vested with fiduciary obligation, even though sellers routinely make representations concerning their product, often on the basis of a claimed expert knowledge about its utility and value." *Id.* (quoting *Comm'n on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 221 (1983) (superseded by statute on other grounds). "Thus, unless a seller has taken on 'duties beyond those of mere fairness and honesty in marketing its product,' the law of fiduciary relationships is ill-suited to deal with such claims." *Id.* (citation omitted); *see also Commission on Children's Television, Inc.*, 35 Cal. 3d at 222 ("the various statutory and common law doctrines fashioned to protect the consumer from overreaching and deception are strong and flexible enough to accomplish that purpose, and that it is unnecessary to call upon the law of fiduciary relationships to perform a function for which it was not designed and is largely unsuited.").

Here, similar to *Martinez*, Plaintiff relies upon his contract with Defendants and alleged misrepresentations by the Defendants' sales agent to allege the existence of a fiduciary or confidential relationship. As was the case in *Martinez*, there is no such fiduciary or confidential relationship between Defendants' sales agent and Plaintiff. There is nothing to elevate the parties' conduct above that of an ordinary contractual relationship and into one of a fiduciary or confidential relationship.

At the hearing, Plaintiff argued that he has a fiduciary relationship with Defendants because the sales agent who sold Plaintiff timeshare points at the Wyndham Canterbury presentation acted as a dual agent who represented both Plaintiff and Defendants in the sale of timeshare points – a type of real estate transaction. Specifically, Plaintiff argued that the sales agent owed Plaintiff written notice regarding this dual representation, which he did not receive.

In some circumstances, a real-estate agent can form a fiduciary relationship with a buyer by being a dual agent for the seller and buyer. *See Assilzadeh v. California Fed. Bank*, 82 Cal. App. 4th 399, 414 (2000). Although a seller's real-estate agent generally acts as the agent for the seller, a real-estate agent can be the agent for both seller and buyer in a transaction if there is knowledge and consent from both the seller and buyer. Cal. Civ. Code § 2079.16. In such a case, the law requires that the agent disclose as soon as practicable whether the agent is acting as a dual agent, and the relationship must be confirmed in the contract. *See* Cal. Civ. Code § 2079.17.

The Court finds that contrary to Plaintiff's argument, the *failure* to provide written notice of a dual agency does not *create* the dual agency. Cal. Civ. Code § 2079.17. Furthermore, Plaintiff has provided no factual basis for a reasonable inference that Plaintiff's contractual relationship with the sales agent reached the level of a fiduciary, confidential, or dual agency relationship. There are no facts showing or implying that the sales agent served as a dual agent between Plaintiff and Defendants. Instead, the alleged dual agent was clearly Defendants' employee – the sales agent worked at Defendants' sales office and sold Defendants' timeshare points at Defendants' sales presentation. Plaintiff could not have reasonably believed that the sales agent represented him as well as Defendants. Thus, the sales agent does not owe Plaintiff a dual agency disclosure because Plaintiff and Defendants never knew about or consented to a dual-agency arrangement. *See* Cal. Civ. Code §§ 2079.16-.17; *Assilzadeh*, 82 Cal. App. 4th at 414 (2000). Consequently, no factual basis with which to support a constructive fraud claim exists.

Plaintiff requests leave to amend his Complaint so that he may specifically allege a fiduciary relationship with the sales agent who sold him the timeshare points at issue. Opp. at 8. However, there is no evidence to suggest that the transaction between Plaintiff and the sales agent at the Wyndham Canterbury was anything more than a contractual relationship. Thus, amendment

would be futile, and thus, Plaintiff's constructive fraud claim is dismissed with prejudice.

## III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' claims five through eight with prejudice.

This order disposes of Docket No. 11.

**IT IS SO ORDERED**.

Dated: November 18, 2015

EDWARD M. CHEN
United States District Judge

United States District Court
For the Northern District of California